UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD CUELLO,

    Petitioner,

  - against -

DAVID ROCK, Superintendent of Great Meadow
Correctional Facility,

    Respondent.

------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT
★ MAY 06 2010
P.M.
TIME A.M. _____

**MEMORANDUM AND ORDER**

08-CV-1138-ENV

**VITALIANO, D.J.**

*Pro se* petitioner Richard Cuello seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for intentional murder in the second degree. Cuello's theory of relief, as stated in his petition, is that the "verdict convicting him of that crime was against the weight of the credible evidence, which showed, at most, that the [death by] shooting was reckless." For the reasons set forth below, Cuello's writ is denied and his petition is dismissed.

### Background

On September 7, 2004, following a jury trial in Supreme Court, Kings County, petitioner was convicted of intentional murder in the second degree, N.Y. Penal Law § 125.25[1], and criminal possession of a weapon in the second degree, former N.Y. Penal Law § 265.03[2] (now re-codified as § 265.03[1][b]). Petitioner was sentenced to concurrent terms of imprisonment of 25 years to life on the murder count, and 15 years on the weapon possession count.

### I.   Undisputed Facts

Neither party disputes the following evidence that was adduced at trial: On the night of March 30, 2003, petitioner was at the Puerto Plata restaurant at 3123 Fulton Street in Brooklyn,

New York. (Transcript of Record, People v. Cuello, Indict. No. 4854/2003 (Kings County Ct. July 13-16, 2004) ("Tr.") at 117, 136.) Also present that evening were Pablo Gonzalez, Rafael Polanco, and Geraldo Declarmen, each of whom testified at petitioner's murder trial. Shortly after midnight, petitioner went upstairs to a gaming room where he got into in a heated argument with Carmelo Frias over a gambling debt. (Id. at 137, 160.) Petitioner left the room, but returned half an hour later with a loaded .38 caliber revolver. (Id. at 161, 266.) Shortly thereafter, two shots were fired. The first shot hit Gonzalez in the chest, and he ran out of the building. (Id. at 105-06.) The second shot hit Frias in the right side of the back and lodged beneath his abdomen, fatally wounding him. (Id. at 139-40, 249-50.) Defendant ran out of the room. (Id. at 139.)

On July 8, 2003, after weeks searching for him, Detective John Kristoffersen found petitioner in police custody in Pennsylvania. (Id. at 213-14). After waiving his *Miranda* rights, petitioner provided the following signed, written statement to the police:

> I was in Puerto Plata late Sunday night. So when I see [Frias], I told him to give me my $7,000. He told me he was to get a gun. I left to [get] a gun because I was scared. I went home and get a gun and went back to Puerto Plata. [Frias] started to fight with me. I sho[ ]t the gun uno or twice. I run down. I to[ok] a taxi to my sister['s] house in Manhattan. I stayed three o[r] four day. Then I went to Boston. I stayed there three day and then I w[ent] to Miami Beach. I stayed there for two week, and the[n] I went to Puerto Rico for uno month and a half. I was [at] my sister house, Kathy. I took a plane to New York airport and then I took bus to PA to my friend house, Miguel. I was sleeping, and then the police arrested me. (Id. at 221.)

The following day, petitioner consented to a videotaped interview with the Assistant District Attorney, during which he provided additional details regarding the shooting.[1] Petitioner explained that Frias had told him that he had a gun, and that if petitioner had a gun he should go retrieve it. Petitioner then said that he went home – ten blocks away – and picked up a gun that a friend had left there a few months prior. Petitioner claimed that he did not know whether the

---

[1] Respondent has provided the Court with a transcript of the interview. (Resp. Br. Ex. 3.) The videotape was played to the jury during petitioner's trial. (Tr. at 40-41.)

2

weapon was loaded, but he returned to Puerto Plata with the gun in his sweater pocket. When he arrived, petitioner claimed, Frias "jumped at" him, and he pulled out the gun as they fought and fell to the floor. Petitioner remembered shooting the gun once or twice while pointing it at the floor, but he did not see whether anyone was hurt. At that point, petitioner ran outside.

## II.   Eyewitness Testimony at Trial

At trial, the prosecution called several witnesses, including the three men present at Puerto Plata on the night of the shooting: Gonzalez, Polanco, and Declarmen.[2]

Gonzalez testified that he had heard an argument between petitioner and Frias regarding money. (Tr. at 119.) When the first shot was fired, Gonzalez's head was "facing down," but afterwards he saw petitioner holding a revolver, and Polanco holding petitioner's wrist and hand toward the ceiling. (Id. at 106-07, 121.) Once Gonzalez realized that he had been shot, he ran out of the building, hearing another gunshot as he went down the stairs. (Id. at 110.) On cross examination, Gonzalez acknowledged that petitioner may have been "a little intoxicated" (id. at 117-18), and that he believed that petitioner had shot him "by mistake." (Id. at 125.)

Polanco also testified that he heard petitioner and Frias argue over money, at which point petitioner left, returning a short while later. (Id. at 137.) Prior to the firing of any shots, Polanco noticed a "commotion" and that someone was grabbing petitioner from behind. (Id. at 147.) Polanco then "heard a shot" from beside him and saw that petitioner had a gun, so he grabbed petitioner's hand, pulling it upward. (Id. at 138, 146.) Polanco testified that they fell to the floor when Frias jumped on both of them from behind, and he heard a second shot without seeing who fired it. (Id. at 138-39.) When Polanco arose, he saw that Frias was injured in the back, and that petitioner was running down the stairs. (Id. at 139-40.) On cross-examination, he explained that petitioner was "highly intoxicated" on the night of the shooting. (Id. at 144.)

---

[2]   The other witnesses called during the proseuction's case-in-chief are not pertinent to this petition.

3

Delcarmen's testimony differs somewhat from that of the other two eyewitnesses. Delcarmen testified that he heard petitioner ask Frias to "go out to fight." (Id. at 161.) Petitioner left, but returned 20 minutes later, announcing that he was going to shoot at Frias (id. at 182-83), and "shot somebody by mistake because somebody struggled with him, and then we all threw ourselves on the ground and floor, and then [petitioner] shot [Frias] on his back." (Id. at 161.) Delcarmen further testified that he never saw petitioner and Frias struggling on the floor (id. at 185), but rather, Frias was on the floor facing down when petitioner, standing up with the gun pointed at Frias's back, fired the weapon. (Id. at 162). On cross-examination, Delcarmen admitted that he initially lied to the police, saying that the shooting had occurred outside the restaurant, because he "didn't want to cause any problems to the name of the establishment." (Id. at 172-77.). Delcarmen testified that he corrected his lie about one week later. (Id. at 178.)

### III. Conviction and Appeal

The trial court's jury charge instructed on two counts of second degree murder: (1) that petitioner caused the death of Frias "with the intent to cause the death," (N.Y. Penal Law § 125.25[1]), where "[i]ntent means conscious objective or purpose" to cause another's death; and (2) the "alternative . . . theory of depraved indifference" (N.Y. Penal Law § 125.25[2]), or "reckless[ly] engag[ing] in conduct which creates a grave risk of death to another person and therefore causes the death of that person." (Tr. at 352-53.) The court explained to the jury that, *inter alia*, "intoxication as such is a not a defense to a crime," but "a jury may consider evidence of a defendant's intoxication in determining whether or not the mind of the defendant . . . was incapable of forming the particular criminal intent which the law makes an element of the crime." (Id. at 360.) The court further instructed that a "person also acts recklessly with respect to another person's death when he creates such a risk but is unaware of that risk solely by reason

4

of his voluntary intoxication" (id. at 354), and that "if . . . after considering all the evidence bearing on the defendant's intoxication you have a reasonable doubt whether the defendant was capable of forming the intent or conscious objective to cause physical injury to Carmelo Frias . . . the defendant must be found not guilty of the crime of murder in the second degree as charged in the first count." (Id. at 361.)

Following his conviction on intentional second degree murder, petitioner appealed, arguing that the prosecution failed to prove that crime insofar as the verdict was "against the weight of the credible evidence, which showed, at most, that the shooting was reckless." (Pet'r. Br. at 11.) On December 19, 2006, the Appellate Division, Second Department, affirmed his conviction, finding that "[v]iewing the evidence in the light most favorable to the prosecution, . . . it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt" and was "not against the weight of the evidence." People v. Cuello, 35 A.D.3d 756, 756, 826 N.Y.S.2d 898, 899 (2nd Dep't 2006). On April 9, 2007, the New York Court of Appeals denied petitioner's application for leave to appeal. People v. Cuello, 8 N.Y.3d 945, 836 N.Y.S.2d 555, 868 N.E.2d 238 (2007). Petitioner filed the instant petition for habeas relief on March 13, 2008.[3]

## Discussion

Petitioner does not challenge his conviction on the weapon possession charge. Rather, Cuello reiterates the claim he made on direct appeal that his *intentional* second degree murder conviction was "against the weight of the credible evidence." (Pet. at 4.) In any case, "the argument that a verdict is against the weight of the evidence states a claim under [New York] state law, which is not cognizable on habeas corpus . . . and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational

---

[3] Respondent does not argue that petitioner's habeas petition is time-barred or unexhausted in the state courts. Accordingly, the Court addresses the petition on its substantive merits.

juror to find guilt beyond a reasonable doubt." McKinnon v. Superintendent, 08-PR-2828, 2009 U.S. App. LEXIS 25380, at *14 (2d Cir. Nov. 19, 2009); see Woods v. Fisher, 03-CV-0572, 2009 U.S. Dist. LEXIS 59789, at *15-*17 (W.D.N.Y. July 14, 2009) (explaining that a "weight of the evidence" claim arises from New York Criminal Procedure Law § 470.15(5), and is thus "purely a matter of state law . . . not cognizable on habeas review"); Williams v. Breslin, 06-CV-2479, 2008 U.S. Dist. LEXIS 78059, at *16-*17 (E.D.N.Y. Sept. 9, 2008) (same); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002). The Court is therefore precluded from considering petitioner's claim as stated.

Nonetheless, as petitioner is a *pro se* litigant, the Court will construe his petition to assert the analogous (though distinct) *federal* constitutional claim that the evidence adduced at his trial was legally insufficient to support his conviction. See Torres v. Fisher, 06-CV-6579, 2010 U.S. Dist. LEXIS 33440, at *9 (E.D.N.Y. Mar. 31, 2010) (construing *pro se* habeas litigant's "weight of evidence" claim as a cognizable legal sufficiency argument); Brewster v. People, 08-CV-4480, 2010 U.S. Dist. LEXIS 4660, at *23-*24 (E.D.N.Y. Jan. 21, 2010) (same). In addressing petitioner's arguments on direct appeal, the Second Department specifically found that the evidence was legally sufficient to establish his guilt. Cuello, 35 A.D.3d at 756, 826 N.Y.S.2d at 899. Therefore, the legal sufficiency claim was adjudicated by the state courts "on the merits."

I.  **The AEDPA Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner only if a claim that was "adjudicated on the merits" in state court resulted in a decision that was (1) contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination

of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); see Gutierrez v McGinnis, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). A state court decision is "contrary to" established federal precedent if it "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519-20 (2000). A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" that case. Id. at 413. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, the state court's application must involve "[s]ome increment of incorrectness beyond error". Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

In addition, under AEDPA, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003).

## II. Sufficiency of Evidence

In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979), the Supreme Court announced the proper standard upon which to review petitioner's claim that the trial evidence was legally insufficient to support his conviction for intentional second degree murder. In assessing such a claim, a habeas court must view all "evidence in the light most favorable to the prosecution," and the petitioner is entitled to habeas relief only if "no rational trier of fact could

7

have found proof of guilt beyond a reasonable doubt" based on the evidence adduced at trial. Flowers v. Fisher, 296 Fed. App'x. 208, 210 (2d Cir. 2008) (quoting Jackson, 443 U.S. at 324, 99 S. Ct. at 2791-92 (1979)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326, 99 S. Ct. at 2793). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997).

Cuello acknowledges that the issue of his "intent" on the night of the shooting turns largely on witness credibility. In his moving papers, he is forced to concede that Delcarmen's testimony "made out an intentional shooting." (Pet'r Br. at 3). After all, Delcarmen testified that petitioner returned to the room, announced his intention to shoot Frias, and ultimately shot him in the back while standing over his body. Notwithstanding, petitioner asks the Court to disregard that testimony, arguing that Delcarmen is "unworthy of belief . . . because he admitted having lied to detectives about the pertinent factors of the incident on the morning of its occurrence and because his testimony was unsupported and contradicted by the credible evidence in the case, including the testimony of Gonzalez and Polanco, which was consistent with [petitioner's] statements to authorities." (Id. at 11.) In making this argument, petitioner clearly requests that the Court do precisely that which is forbidden: overriding the jury's determination that Delcarmen told the truth. See Fulton v. Greene, 05-CV-6314, 2009 U.S. Dist. LEXIS 102971, at *16-*17 (W.D.N.Y. Nov. 5, 2009) ("A sufficiency claim therefore does not permit the reviewing

court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact.") (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983)); Minigan v. Donnelly, 01-CV-26, 2007 U.S. Dist. LEXIS 64446, at *72-*73 (W.D.N.Y. Feb. 16, 2007) (noting that the reviewing court may not "attempt to second guess a jury's credibility determination") (citing United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006)). Moreover, owing to the vigorous efforts of defense counsel on cross-examination, the jury was perfectly aware of the alleged deficiencies in Delcarmen's testimony and credibility, but obviously determined to credit that testimony anyway. It is not for this Court to usurp that fundamental and crucial role of the jury.

In any event, Delcarmen's testimony was not as uncorroborated as petitioner would have the Court believe. A reasonable jury could have convicted petitioner of intentional second degree murder even without the benefit of Delcarmen's statements. Cuello does not dispute that: (1) he was involved in a heated argument with Frias; (2) he returned to the room with a loaded revolver; (3) he shot the gun "once or twice;" (4) Frias was shot in the back; (5) petitioner left the scene immediately after the second shot; and (6) he fled both the state and the American mainland over the following few weeks. From these facts alone, it is hardly a stretch to infer that petitioner possessed an intent to kill Frias. The jury could have chosen to believe his version of the events that implied reckless behavior – i.e., that he did not know the weapon was loaded and that the shots were unintentionally fired during a physical struggle – but they were not required to do so. Nor was the jury required to believe Polanco's testimony that petitioner was drunk at the time. In fact, even if they did believe he was intoxicated, they did not need to find that his intoxication negated his criminal intent. See People v. LaGuerre, 29 A.D.3d 820, 822, 815 N.Y.S.2d 211, 213 (2nd Dep't 2006) (explaining that "the general rule is that an intoxicated

9

person can form the requisite criminal intent to commit a crime, and it is for the trier of fact to decide if the extent of the intoxication acted to negate the element of intent"); People v. Gonzalez, 6 A.D.3d 457, 457, 773 N.Y.S.2d 889, 889 (2nd Dep't 2004) (same). It was neither unreasonable for the jury to reject petitioner's theory of the case, nor unreasonable for the Second Department to determine that the evidence was legally sufficient to support the intentional second degree murder conviction. Under any view, moreover, including under federal constitutional analysis whether or not AEDPA deference is applicable, habeas relief is unwarranted and must be denied.

## Conclusion

For all of the foregoing reasons, Cuello's petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since Cuello has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 5, 2010

ERIC N. VITALIANO
United States District Judge